# APRIL TERM, 1891.*

JOHN J. SHAW v. A. CASS CANFIELD, J. HUFF JONES, AND HENRY B. LEDYARD, TRUSTEES.

*Power of trustees—Principal and agent.*[1]

1. Where several persons are appointed to execute a power or trust, and no authority is given to a less number than the whole to act, all must join in the execution. *Scott v. Society,* 1 Doug. 149; *Weise v, Rich,* 77 Mich. 325.
2. Permission by two of three trustees to their co-trustee to extend the term of a lease and collect the rents cannot be construed as giving him authority to purchase a house on the leased premises.

Error to Wayne. (Hosmer, J.) Argued April 17, 1891. Decided May 8, 1891.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Charles Flowers,* for appellant.

*Walker & Walker,* for defendants.

[The points of counsel are fully stated in the opinion. —REPORTER.]

LONG, J. The plaintiff is the owner of a house situate upon lot 26, block 4, Cass Farm, Detroit. The fee

---

* Continued from Vol. 85.
[1] For full digest of points decided, see *Table of Cases Reported.*

of the lot is in the defendants as trustees. The plaintiff held a lease of the lot. The lease was originally executed in 1860 by Lewis Cass to Charles Gubby for 10 years. It was renewed from time to time, till May 1, 1880. Gubby held over without renewal, until March 2, 1882, at which time he transferred the lease to the plaintiff. On July 29, 1880, the property then being a part of the estate of Isabella Von Limburg, she executed a trust-deed to the defendants. After the transfer of the lease to the plaintiff, the following extension and agreement was indorsed on the lease:

"The within lease is hereby extended for the term of five years from and after the first of January, 1882, at the rate of two hundred dollars per year, payable half yearly; J. Shaw to pay all taxes and comply with the conditions of said lease; also to pay, on or before 1st July, 1882, balance of rent due by Gubby to 1st January, 1882, with interest.

'J. HUFF JONES, Trustee, etc."

The plaintiff on March 10, 1885, sublet said premises to Maggie Burns, by written lease, for $50 per month, and gave Mrs. Burns the option of buying the house on the lot for $700. This lease, by its terms, was to expire on May 1, 1887. The plaintiff's term was to expire under his lease on January 1, 1887. The plaintiff being back on his rent, on November 5, 1885, Mr. Jones sent him the following statement of account:

"*Mr. J. J. Shaw,*
        "TO VON LIMBURG ESTATE.
"J. Huff Jones, agent.
                            "January 1, 1886.
To bal. of rent and interest, as per statement given
    you _____ $554 00
By cash received on above in 1885_____ 350 00
                                                 _____
                                                 $204 00
Int. to Nov. 15_____      22 00
                                                 _____
                                                 $226 00"

The claim of the plaintiff is that in the fore part of December, 1886, he received a letter from Mr. Jones stating that the trustees had decided not to renew the lease to him, and demanded the possession of the premises on January 1, 1887; that he saw Mr. Jones, and told him that it would be impossible to do anything about putting Mrs. Burns out until May 1, 1887, and that he would put her out at that time, if he would extend the lease; that Jones consented to such extension, and that Mrs. Burns might pay the rent over to him (Jones) from January 1 to May 1, 1887, and if she did not leave on that date the plaintiff was to put her out at his own expense; that Mrs. Burns consented to this; that about a week after this time the plaintiff received word that the defendants were about to take proceedings to put Mrs. Burns out; that he then told Mr. Jones he did not want to lose the building, and Mr. Jones then agreed to give him what the building was worth, and got a contractor to estimate the value, which he did at $500, and that Mr. Jones again consented to let Mrs. Burns remain until May 1, the rent to be paid by her to Mr. Jones, to pay up the amount of back rent due from the plaintiff on the lease, and that it was agreed that the plaintiff should then receive the pay for the house, which was to be settled and paid as soon as Mrs. Burns was out of the house. It is claimed that Mr. Jones violated this agreement by commencing proceedings to get possession of the property before May 1. This action was commenced to recover the amount which plaintiff claims Mr. Jones agreed to pay him for the house, less the amount of rent due from the plaintiff, amounting, as plaintiff claims, to about $300.

The defendants' claim on the trial was that on December 7, 1886, plaintiff was formally notified by the trustees that his lease would not be renewed; that plaintiff came to Detroit from Port Huron, where he then resided, and

had an interview with Mr. Jones, who told him that the lease would not be renewed, because Mrs. Burns was keeping a disreputable house there. Mr. Jones denies making any arrangement by which Mrs. Burns was to remain until May 1, but says he only agreed to submit the proposition to Mr. Ledyard.

It is admitted that on December 28, 1886, Mr. Jones sent to the plaintiff the following letter:

"I have had an interview with Mr. Ledyard in reference to your proposition, but he is unwilling to do anything in the matter until the premises are vacated. You will therefore see that the present tenant gives up possession on the first of January, 1887, when the lease expires."

Upon receipt of this letter the plaintiff again came to Detroit. Up to this time nothing had been said about the purchase of the house by the trustees. It is conceded that the plaintiff did not get Mrs. Burns out of the house on May 1, not did he attempt to do so, but aided her in retaining possession.

The court below, under this state of facts, directed the verdict for the defendants for the amount of the rent due, $546.53, and disallowed the plaintiff's claim for the value of the house, which plaintiff claims to have sold at $500 to Mr. Jones. The reason given by the court in directing the verdict is that the plaintiff failed to make his case by his proof, as under the trust-deed there is no authority shown in Mr. Jones to make the contract under which plaintiff seeks to recover. The judgment rendered was the amount of rent due, and taxes which the trustees paid, which by the terms of the agreement the plaintiff was to pay. The only claim is that the court was in error in directing the verdict for the defendants, and disallowing the plaintiff's claim.

The trust-deed contains the following clause:

"To take possession and control of all said property, with full power to sell the same, or any part thereof; to collect all moneys, rents, income, interest, or profits which may become due or accrue upon, from, or by reason of any of said property; to invest, upon safe security, proceeds of any sales, as well as any moneys collected; and generally to do any acts touching said trust property which the prudent and judicious management of the same may from time to time require."

The plaintiff's contention is that under this trust-deed the trustees had the power to appoint one of their number the agent to manage the estate, to make leases, collect rent, and negotiate with tenants as to the manner in which the rent should be paid or compromised, to make contracts of novation, substituting one tenant for another, and, in general, to do anything with reference to said property which a prudent and judicious management might require; that it is shown that Jones was appointed agent, or for years was permitted to act as such, and the management of the estate was left in his hands; and that, therefore, Jones had the right and authority to make the contract for the purchase of the house, and to release the plaintiff from the payment of rent, and look to Mrs. Burns therefor; and that he did accept Mrs. Burns in his stead, for the payment of the rent from January 1 to May 1, 1887, which was $50 per month, while his rent was only $200 per year.

The court was not in error in directing the verdict. It was held in *Scott v. Society*, 1 Doug. 149, that where several persons are appointed to execute a power of trust, and no authority is given to a less number than the whole to act, all must join in the execution. The claim made by the plaintiff is for the value of the house sold to Mr. Jones as trustee. Clearly, within the terms of this trust-deed, Mr. Jones had no power to purchase this property without the consent of the other trustees, and no such

consent is proven or claimed.   On the contrary, the plaintiff had express notice on· December 28, 1886, that Mr. Ledyard was unwilling to let Mrs. Burns stay in the house after January 1, and demanded that it should be surrendered on that day.   The trust established by the deed is a joint one, requiring the consent of all the trustees to any valid action in regard to the estate, and a contract made by only one trustee would be void. *Scott v. Society*, 1 Doug. 149.   The powers of the trustees are limited by the instrument.    *Weise v. Rich*, 77 Mich. 325.

These propositions are not disputed by the counsel for plaintiff, but it is claimed that as agent for the trustees Mr. Jones was impliedly, at least, vested with sufficient power to make the contract claimed by plaintiff.   This is claimed to be established—

1. By the previous dealings between the plaintiff and Mr. Jones as manager of the estate.
2. By Mr. Jones' testimony.

The only dealings between the plaintiff and Mr. Jones shown by this record were the extension of the lease made in 1882, and the collection of the rents under it.   Being permitted by the other trustees to extend this lease and collect rents could not be construed as giving him authority to purchase this house.   It is admitted that the trustees had refused to allow Mr. Jones to negotiate at all in reference to the matter so long as the Burns woman occupied the house.   The letter of December 28, 1886, was sufficient notification to the plaintiff of that fact, and the plaintiff was not in a position to claim that Mr. Jones had any such power after the receipt of this notice.   If he regarded Mr. Jones as the agent of the trustees, it was his duty to inquire into the scope of the authority vested in him.   This he did not do, though notified that Mr. Ledyard would not accept his proposition, or do any-

thing in-the matter until the premises were vacated. The court was not in error in directing the verdict. It must be conceded that, unless this claimed arrangement was a valid one, the defendants. had a right to recover the rent and taxes due, with interest.

The judgment of the court below is affirmed, wlth costs.

The other Justices concurred.